E-FILED
Tuesday, 24 November, 2020  04:44:09 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## IN THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GRACE O'SHEA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No: |
| vs. | ) | |
| | ) | |
| | ) | |
| **AUGUSTANA COLLEGE,** | ) | |
| Serve:  Sheri Curran | ) | |
| Augustana College | ) | |
| 639 38th Street | ) | |
| Rock Island, IL 61201-2210 | ) | |
| | ) | |
| **CONOR LARKIN,** | ) | **JURY TRIAL DEMANDED** |
| Serve at: 3816 W 110th Place | ) | |
| Chicago, IL 60655-4039 | ) | |
| | ) | |
| **ERIN LARKIN,** | ) | |
| Serve at: 3816. W. 110th Place | ) | |
| Chicago, IL 60655-4039 | ) | |
| | **)** | |
| **TOM PHILLIS,** | ) | |
| Serve at: 2418 22 ½ Avenue | ) | |
| Rock Island, IL 61201-4633 | ) | |
| | ) | |
| **KYLEE ROSS,** | ) | |
| Serve at: 5023 49th Street Court | ) | |
| Moline, IL 61265-7534 | ) | |
| | ) | |
| **And,** | ) | |
| | ) | |
| **LAURA SCHNACK.** | ) | |
| Serve at: 139 13th Street | ) | |
| Silvis, IL 61282-1021 | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW the Plaintiff, Grace O'Shea, by and through her attorney, Nicole

Gorovsky of Gorovsky Law, LLC, and for her complaint against Defendants, Augustana

College, Conor Larkin, Erin Larkin, Tom Phillis, Kylee Ross, and Laura Schnack, states as follows:

## I.    JURISDICTION AND VENUE

1.  Jurisdiction lies under 28 U.S.C. §1331 and § 1343(a)(4) in as much as this complaint presents a federal question.

2.  Plaintiff brings this action in part pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. §1681) which is an act of Congress providing for protection of civil rights.

3.  Venue in the Central District of Illinois is appropriate because the occurrences complained of took place in Rock Island County, Illinois. 28 U.S.C. §1391(2).  It is also appropriate because Plaintiff, Defendants Augustana College, Tom Phillis, Kylee Ross, and Laura Schnack all reside within the Central District of Illinois. 28 U.S.C. §1391(1).

## II.    PARTIES

4.  Plaintiff, Grace O'Shea is an adult female and was a student, attending courses and living on the Augustana College Campus in Rock Island, Illinois from 2016 until May 2020.

5.  Defendant Conor Larkin is an adult male and was at all times relevant to this complaint a guest of or student at Augustana College.

6.  Defendant Ein Larkin is an adult female and was at all times relevant to this complaint a student at Augustana College and sibling to Defendant Conor Larkin.

7.  Defendants Tom Phillis, Kylee Ross, and Laura Schnack are employees of Defendant Augustana College and were such at all times relevant herein.

8.  Defendant, Augustana College, is a private, liberal arts college, conducting its business in the state of Illinois, with business offices in Rock Island, Illinois. Augustana College receives federal financial assistance in the form of financial aid for its students and

further receives federal grants as required for litigation under Title IX of the Educational

Amendments of 1972, 20 U.S.C §1681 *et seq.*

## III.    FACTS APPLICABLE TO ALL COUNTS

9.  In April 2018, Grace O'Shea ("Plaintiff") was a sophomore student at Augustana College

in Rock Island, Illinois.

10. Augustana College is a federally-funded education program as it receives federal

financial assistance in the form of financial aid for its students as required for litigation

under Title IX of the Educational Amendments of 1972, 20 U.S.C §1681 *et seq.*

### A.  The Sexual Assault

11. On or about April 15, 2018, Plaintiff was sexually assaulted by Defendant Conor Larkin

who was visiting Augustana College.  Upon information and belief, Defendant Conor

Larkin was at Augustana College on April 14-15, 2018 as a prospective student and to

visit his sister Defendant Erin Larkin who was a current Augustana College student

12. During the nighttime hours of April 14, 2018, Plaintiff was socializing with friends on

campus. At approximately between 9:30 and 10:00 P.M. on the evening of April 14, 2018

Plaintiff was with friends at the Erickson Hall dormitory on the Augustana College

Campus.

13. Inside the dormitory Plaintiff consumed a large alcoholic drink in a water bottle.  The

drink contained three shots of vodka, some water, and Crystal light mix.

14. After drinking at the Erickson Hall dorm, Plaintiff and two of her friends took an

Augustana College Express Service (ACES) car to a fraternity house called "the

Lighthouse" where a party was going on. Plaintiff and her friends had alcoholic drinks

with them in the ACES vehicle. The ACES driver noted that the women were intoxicated.

3

15. By the time Plaintiff arrived at the party at approximately 10:30 P.M. Plaintiff demonstrated signs of being intoxicated. She was offered and then consumed more alcoholic beverages at the fraternity party in plastic party cups. At the party, witnesses observed that Plaintiff was "really drunk" and sitting down in a chair to avoid falling over- at times appearing slumped over with alcohol in her hands.

16. Witnesses noted that Plaintiff was so intoxicated that she was at times closing her eyes in the chair, with people telling her to "Wake up." She felt she was losing consciousness, and she could feel everything around her spinning.

17.  Plaintiff fully lost consciousness and/or the ability to recall at the party.  She called it "blacking out." The next event she recalls after regaining consciousness and memory is being at the 2nd Avenue Bar located in Rock Island, Illinois later in the night. However, Plaintiff does not recall how she arrived at the bar.

18. Plaintiff was under the age of 21 on April 14-15, 2018 and was originally denied entry to the bar. However, a bouncer recognized a friend with Plaintiff and granted them entry. Once inside, they noticed that the bar was crowded.

19. While at the bar, Plaintiff drank more alcohol. Bar patrons provided the alcohol to her and she drank what she was given. As the evening wore on at the bar, Plaintiff had difficulty recognizing and identifying people – even her own friends. She also had difficulty understanding what people were saying around her. She had blurred vision, was unaware of her surroundings, and felt nauseous. At certain points that evening, she had difficulty holding up her own body weight and had to lean on people or things to stand up. Her eyes were glassy, and she looked like she did not know where she was. At times, she was falling over. In short, Plaintiff was visibly intoxicated according to witnesses.

20. Plaintiff first encountered the perpetrator, Defendant Conor Larkin at the 2nd Avenue Bar on the dance floor while she was in this visibly intoxicated state. Defendant Conor Larkin approached Plaintiff, grabbed her, and turned her around. When he did this, Plaintiff did not recognize him but was confused as to why he was acting so intimately with her.  She thought she must know him, but she was impaired and confused. Plaintiff moved away to find her friends, but she felt lost and Defendant Conor Larkin re-approached her several times. Each time, he acted overly familiar with Plaintiff and aggressively intimate.

21. Witnesses report that they saw Defendant Conor Larkin standing behind Plaintiff, towering over her and kissing her neck as if he was her intimate partner.  He also had his hands on her body. One of these witnesses was disturbed by Defendant Conor Larkin 's behavior and approached Plaintiff out of concern.  She asked if Plaintiff was ok. Plaintiff did not have time to respond. Instead, Defendant Conor Larkin snapped back that Plaintiff was fine. The witness felt he was acting defensive and possessive of Plaintiff. She felt nervous and uncomfortable with his response and walked away from them.

22. Later in the evening, the perpetrator's sister, Defendant Erin Larkin, who was a student at Augustana College, approached Defendant Conor Larkin and scolded him for acting "creepy" with Plaintiff. She told Defendant Conor Larkin to stay away from Plaintiff. Defendant Conor Larkin did not listen to his sister.

23. After some time on the dance floor, Defendant Conor Larkin told Plaintiff to "come with me" and pulled her by the wrist. Plaintiff could not hear him and was confused.  She thought that she was going to the bar for a drink and told another witness she would be right back.

24. Defendant Conor Larkin led Plaintiff by her wrist but did not take her to the bar. He took her to the men's room. He led her inside the men's room to a large stall and closed and locked the stall door. Plaintiff was confused as to where she was. She later stated in the Title IX report described herein that "At this point, I had no awareness he took me in the men's bathroom…of all places for me to have a sexual encounter, the men's bathroom never has been and never will be an acceptable place for me to engage in sexual activity."

25. Inside the men's bathroom, Defendant Conor Larkin pulled down Plaintiff's shirt and brassiere, exposing her shoulder and one breast. He put his mouth on her neck and breast. Plaintiff was so confused and horrified by this, she grabbed Defendant Conor Larkin by his hair to pull him off her.

26. Instead of stopping, Defendant Conor Larkin then kissed Plaintiff's mouth and without consent, sexually assaulted her. At no time had Plaintiff given consent – verbal or otherwise – to Defendant Conor Larkin to engage in sexual activity.

27. Defendant Conor Larkin 's sister, Defendant Erin Larkin, then entered the men's bathroom. She had been looking for her brother and heard from witnesses that he was in the bathroom. She yelled for him through the bathroom door. Defendant Conor Larkin verbally responded to his sister telling her to go away. Plaintiff used the distraction to get dressed.

28. Defendants Conor Larkin and Erin Larkin had a yelling match and finally Conor Larkin opened the bathroom stall door.

29. When the door opened, Defendant Erin Larkin confronted Plaintiff, and called her a "ho" which is short for "whore." Erin Larkin then then slapped Plaintiff across the face.

30. When Plaintiff escaped the bathroom, she was stumbling and frantic. She could not walk in a straight line and could barely hold herself up.

31. Plaintiff found her friends, and told them, "I think I just hooked up with a guy but I'm not sure." Her intoxication was so great, she was unable to fully comprehend or articulate what had happened.

### B.  Reporting of Assault & Defendant Conor Larkin's Enrollment at Augustana College

32. Plaintiff experienced abnormal vaginal bleeding and pain in the day following the assault. She also had bruises on her neck and chest, and a scratch on her wrist from where Defendant Conor Larkin had grabbed her.

33. A friend of Plaintiff's reported the assault to Augustana College the morning of April 15, 2018.

34. On April 16, 2018, Plaintiff reported the assault to the police.  She also spoke with a professor who reported the assault to Defendant Schnack, the Augustana College Title IX Coordinator. Schnack asked her if she wanted to make an official report with the college. Plaintiff made the report with Schnack and the Rock Island Police.

35. When Augustana College became aware of the assault on or around April 16, 2018, the college was required under Illinois state law (ILCS 155/20) to provide Plaintiff with a Confidential Advisor This advisor was in turn required to provide Plaintiff with the ability to speak confidentially, advise her of her rights, resources and accommodations available to her, and to inform her of the college's responsibilities. Augustana failed to do this.

36. Augustana's policies regarding Title IX state the following regarding accommodations:

7

> College programs and procedures must be accessible to all
> students. Students who have a documented disability have the right
> to reasonable accommodations that are necessary to make
> college policies accessible, including these investigation and
> resolution procedures. Students with disabilities may request
> accommodations by contacting with the Director of Disability
> Services and filling out the "request for academic
> accommodations" form on the link provided:
> https://www.augustana.edu/student-life/residential-
> life/accommodations. The Title IX Coordinator or their designee
> will work with the Director of Disability Services to provide
> reasonable accommodations that are necessary to make these
> policies and procedures accessible. Students who have or think
> they may have a disability are invited to contact the Director
> of Disability Services for a confidential discussion. For more
> information, please contact kamwilliams@augustana.edu or visit
> room 314 of the Tredway Library.

This policy tells students that they are not entitled to accommodations unless they have a
disability.

37. Despite the incorrect written Augustana College policy that would mislead any student

    seeking accommodations into believing that they must have a disability to receive

    accommodations (as opposed to surviving a sexual assault like Plaintiff), Plaintiff did

    manage to receive a few accommodations. More specifically, Plaintiff received

    accommodations for tests, exemption from certain assignments that dealt with the topic

    of rape, and some deadlines were extended. However, she constantly felt that she was

    going to get into trouble for suffering the effects of the assault and felt that her College

    left her to suffer alone.

38. For over a year following the assault, Plaintiff did not know the identity of the perpetrator

    who assaulted her on April 15, 2018. She did not know if he was a student, a Rock Island

    resident, or if she would encounter him again. She walked campus in fear.

39. One of her friends who was at the bar with her on the night of the assault told her that the description of the girl who hit her sounded like Defendant Erin Larkin, an Augustana student. Sometime later, Erin Larkin's friends talked on campus about how Erin's brothers had been visiting her on the weekend of the assault and Plaintiff heard this. Plaintiff then learned that one of the brothers was a prospective student at Augustana.

40. Upon hearing that one of Defendant Erin Larkin's brothers was a prospective student at Augustana College, Plaintiff asked a Dean at the College if the administration could prevent the perpetrator from being accepted at Augustana College because he sexually assaulted her. The Dean responded that a prospective student could not be prevented from acceptance for a sexual abuse allegation. The Dean suggested that if there was a formal investigation, maybe he could do something about the prospective student but there was not a mechanism to have a formal investigation of a prospective student. So, Conor Larkin was recruited by Augustana College to play Lacrosse.

41. On February 15, 2019, Augustana offered and Defendant Conor Larkin accepted a position on the Augustana College Lacrosse Team for the 2019-2020 academic year.

42. On May 3, 2019 – after Plaintiff was assaulted by Defendant Conor Larkin in a bathroom, but before Larkin was on campus – a 19-year-old male Resident Advisor in Plaintiff's Campus Dormitory ("RA") barged into the women's restroom where Plaintiff and other female students were in various stages of undress. He grabbed Plaintiff by the arm even though she had done nothing wrong. As a sexual assault victim, who had been grabbed by the arm and assaulted in a public restroom, Plaintiff was triggered by having this man grab her in the restroom and responded as most traumatized victims would: she cussed at the RA and told him to get out of the women's bathroom. The Resident Advisor

refused to exit the restroom. Someone called the campus police and Officer Kylie Ross

arrived.  Plaintiff notified the RA and Officer Ross that she suffered a sexual assault and

that the RA's behavior triggered the trauma she experienced because of this assault.

Other women who witnessed the incident also complained about the RA's actions during

this incident.

43. Defendant Kylee Ross was not the only person to arrive to answer the call. Augustana

College responded to this incident by having one of their employees contact the police

*and coincidentally, the Lacrosse coach*. Conor Larkin had been offered a position on the

Lacrosse team at the time, but Plaintiff did not know that.  These Augustana actors

combined, officially punished O'Shea for her trauma response to this incident.

44. On May 10, 2019 Plaintiff received a disciplinary letter from Ariel Rogers, the Area

Coordinator of Transitional Living Area, stating that Plaintiff "violated the following

Residential Life policy…Housing: Non-compliance." The letter further stated that

Plaintiff had to meet with Augustana College officials for a disciplinary meeting because

of the incident.

45. Rogers led the disciplinary meeting against Plaintiff on May 13, 2019. During this

meeting, Rogers said to Plaintiff, "I heard you were not very nice to our staff last week."

Plaintiff discussed her sexual assault and explained how the male RA's behavior was not

only inappropriate but also triggering.

46. Rogers interrupted Plaintiff and said that "You're doing it right now. You're being

aggressive by using a hostile tone just like you did with our staff."

47. When Plaintiff attempted to explain to Rogers that it was inappropriate for a sophomore,

19 year-old male student to enter a bathroom with naked girls, Rogers simply said: "He is

an employee of the college and had a right to do so. You need to treat our employees with respect." Rogers forced Plaintiff to apologize to the male RA.

48. This was Plaintiff's experience with Augustana College after reporting that she had been assaulted and in trying to deal with the aftermath of that trauma. Augustana's actions through Ross and Rogers were discriminatory, re-traumatizing, and hostile towards Plaintiff because of her gender and status as a sexual assault victim.

49. In September 2019, Plaintiff saw the perpetrator walking on campus. She recognized him and felt panic. Plaintiff was on the swim team and saw the perpetrator training at the same time and in the same facility as the swim team. She was sure it was him.

50. In October 2019, Plaintiff was able to verify Defendant Conor Larkin's identity. She looked up his Lacrosse team photo online and confirmed that his name was, in fact, Conor Larkin.

51. Plaintiff contacted the Title IX office to alert them that she saw the perpetrator on campus Title IX personnel told her she could file a complaint.

52. Defendant Augustana College did not protect Plaintiff or show any concern for her safety. Although Schnack told Plaintiff that she could seek a no contact order from the College, Schnack noted that the order meant that Plaintiff faced punishment if she ran into the perpetrator accidentally on campus while the order was pending. So, fearing punishment, Plaintiff chose not to seek the no contact order.

53. Plaintiff's fear for her safety following Larkin's arrival led Plaintiff's parents to come to the Augustana College campus in November 2019 to meet with Augustana College officials, including Defendant Schnack. Plaintiff and her parents wanted Plaintiff to have interim safety measures to protect her. Plaintiff's swim coach was also present and

informed Schnack that Plaintiff's swim schedule forced her to cross paths with the Lacrosse team regularly and that he feared for her safety.

54. During this meeting, Plaintiff was so terrified of Defendant Conor Larkin and further retaliation from Augustana that she could not tell the Augustana Officials the name of the perpetrator. She was afraid of what could happen to her should she reveal the name of the perpetrator, who violently sexually assaulted her in the bathroom, and his sister, who was also on campus and physically assaulted her. She felt the campus police did not like her and that they were not there to protect her if something did happen.

55. Plaintiff had already faced discriminatory and unfair disciplinary action from Augustana College and was worried she would be punished further if she were to seek any intervention from the Title IX Office.

56. Augustana College's only offer of a mutual "no contact" order, which operates to punish both the perpetrator and victim (who sought the most basic of interim safety measures), was designed to discourage victims like Plaintiff from seeking help. It further discourages students, and Plaintiff from initiating the Title IX investigation process. Simply put, it has a chilling effect on students seeking safety and assistance as they pursue their rights under the Title IX process.

57. After learning that Defendant Conor Larkin was a student at Augustana College and being denied interim safety measures by Augustana College, Plaintiff was so distressed and terrified that she filed applications to transfer to a different school.

58. Plaintiff, however, decided she had been treated unfairly and wished to stand up for herself at Augustana College and hold Defendant Conor Larkin accountable for what he did to her.

### C.  Title IX "Investigation"

59. It took time for Plaintiff to reach her decision to pursue the Title IX process.  She feared the officials at the College as they had not been appropriate with her in the past.  She further feared the privacy violations, retaliation, and gender discrimination that she was sure she faced. She filed a Title IX complaint against Defendant Conor Larkin on January 23, 2020.

60. At the time of filing the formal Title IX complaint, Plaintiff specifically asked the Title IX office if Defendant Conor Larkin's non-student status when he assaulted her would impact her complaint.  The Title IX Office told Plaintiff that would not matter.

61. Augustana College's assurance to Plaintiff that Defendant Conor Larkin's non-student status at the time of the assault would not matter and that the Title IX investigation process would proceed was in line with Augustana's policies and Title IX. Augustana's policies state: "employees…students, guests, and visitors" are prohibited from engaging in sexual harassment.

62. Furthermore, Augustana College promised Plaintiff that the fact that neither the assault occurring off campus nor the date of the assault would have any impact on the Title IX process. Plaintiff believed Augustana College and relied on these assurances to go forward with the Title IX formal complaint process that she had been so afraid to do.

63. The investigation, however, turned out to be a complete ruse that was discriminatory and retaliatory to Plaintiff and culminated in the lack of any final determination or conclusion.

64. Defendants engaged repeatedly in discriminatory behavior against Plaintiff and denied Plaintiff her basic rights in the Title IX process.

13

65. Augustana began the process by telling Plaintiff that she was entitled to a "support person" of her choosing in the investigation.  Augustana permits that the support person can be a legal representative for the Complainant. Accordingly, Plaintiff designated her attorney as the support person for her Title IX process.  Upon information and belief, Defendant Conor Larkin did the same.

66. Augustana then sent a contract to Plaintiff and the support person which was required for signature to proceed in the process.  The contract had full confidentiality as a condition for Augustana College proceeding in the Title IX investigation. More specifically, it requested the student and the support person to sign away their legal rights to litigate under Title IX because if a student agreed to keep information confidential for all time, they were prohibited from ever presenting that information to a court. To be clear, Augustana College required that to move forward with a formal Title IX complaint, a Complainant must agree to confidentiality, thereby waiving her right to litigate under Title IX following the complaint process.

67. Plaintiff was told that if her chosen support person did not sign the document, she could not participate in the Title IX process. This caused extreme anxiety for Plaintiff.

68. Next, Augustana did a formal interview of the Complainant.

69. Augustana does not have a Title IX investigator so it uses Campus personnel as Title IX investigators.  The College offers one male and one female investigator.  Chief of Campus Police Tom Phillis was offered as the male investigator.  For the female, Augustana offered to Plaintiff, Kylee Ross – the female police officer who had chastised her for yelling at the RA in 2019, or Ariel Rogers, the Area Coordinator of Transitional

Living Area who had disciplined her for that incident. Plaintiff felt trapped but she chose Kylee Ross.

70. Ross had a clear conflict of interest due to her prior interaction with Plaintiff.  Moreover, it was difficult for Plaintiff to choose to reveal a hugely traumatic experience where she had to show extreme vulnerability to her interviewers when two of the three interviewers offered to her had previously been involved in disciplining her in retaliation for her report of the very assault she was discussing.

71. Tom Phillis, the other Title IX investigator was the lead investigator on Plaintiff's formal complaint against Conor Larkin. Phillis, selected by Augustana College, questioned Plaintiff in the presence of Ross. Phillis's questioning was discriminatory and intentionally retaliatory. He asked Plaintiff questions about her sexual history, whether on the night of the assault she was "looking for a 'good time,'" if she was wearing undergarments, how tight her jeans were, and how low-cut her shirt was. All these questions were humiliating, re-traumatizing, and victim-blaming, and amounted to discrimination and retaliation against Plaintiff.

72. Phillis' interrogation of Plaintiff regarding her sexual history, furthermore, was directly in violation of Title IX, Illinois law (110 ILCS 155/1 – the Illinois Preventing Sexual Violence in Higher Education Act), and Augustana College's own policies, which state that "A person's consent to past sexual activity does not constitute consent to future sexual activity…A person's consent to engage in sexual activity with one person does not constitute consent to engage in sexual activity with another person."

73. Additionally, the Illinois Preventing Sexual Violence in Higher Education Act requires Universities including Augustana College to notify students reporting sexual assault that

there is amnesty in discussing "any student conduct violations, such as underage drinking" that may have occurred prior to or during the assault.

74. Instead of informing Plaintiff and witnesses in her case about the policy, Phillis repeatedly asked O'Shea and witnesses how they were able to enter a bar and get alcohol while underaged, and expressed disappointment with her and these witnesses for doing so.

75. Phillis's behavior in this investigation flies in the face of why such "amnesty" provisions exist – sexual assault due to the lack of consent can be based on a lack of capacity which necessarily requires that complainants and witnesses feel free to reveal drug and underage alcohol use to investigators. Phillis's tsk-tsk attitude and failure to inform witnesses of the amnesty provisions as required likely had a chilling effect on relevant testimony in favor of the lack of capacity issues.

76. Rather than performing his duties as an investigator required under Title IX, Phillis also engaged in discriminatory and retaliatory conduct toward Plaintiff by seeking humiliating information about her past from Plaintiff and witnesses, intimidating her disclosed witnesses, and asking her friends to discredit her "character." He also revealed confidential information about Plaintiff's assault to others. Rather than focusing on investigating the sexual assault and the perpetrator, Phillis targeted the victim.

77. Augustana College also violated Plaintiff's privacy as Ross maintained a publicly viewable Google calendar that showed every single Title IX case Ross was working on, including Plaintiff's. This calendar revealed the names of the reporting victims, the names of the perpetrator, every individual Ross was interviewing, and when she was conducting said interview. Any Augustana College student could see who had reported a

sexual assault at Augustana College and against whom. This included Plaintiff.
Additionally, the perpetrator, if he chose, could see the entire investigation as it unfolded
against him and beat the investigators to witnesses or focus on manufacturing evidence to
counteract each witness.

78. Plaintiff discovered this publicly available Google calendar and was mortified to see
information about hers and other people's cases so openly available. So, she notified
Augustana that the calendar was public and begged them to force Ross to set the calendar
to private. Defendants did nothing to make this information private. The calendar – along
with all the information regarding Title IX complaints – remains publicly viewable as of
the date of filing this Complaint.

79. Ross's Google calendar is yet another Title IX violation, in that Augustana College, like
any other college, is required to maintain student privacy in Title IX complaints – yet
Ross allowed the names of who those who file Title IX complaints, including Plaintiff, as
well as all of the witnesses in her case to be seen by other Augustana College students,
faculty and staff, and the perpetrator.

80. Meanwhile, over the course of the "investigation", Augustana College allowed Defendant
Conor Larkin to intentionally delay the investigation process by allowing him to skip
multiple interviews without rational explanation or consequence. Likely, he delayed his
own interview as he watched Ross's calendar so he could see the entire investigation
unfold before he gave his statement. Augustana enabled him to do this.

81. Worse, over the course of the investigation, Defendants failed to investigate the assault.
Instead, they placed that burden on Plaintiff, who had to run the investigation herself.
There was no investigation procedure or process other than for the trained police officers

to do nothing but force Plaintiff to tell them how to conduct the investigation.  Even though Ross and Phillis are supposedly trained investigators, they do not run Title IX investigations as "investigations."  Instead, they start by taking an interview of the Complainant in a Title IX investigation. Then, they force the Complainant to tell them where she thinks the investigation should go.  Although the investigators chose the interview techniques and the questions to be asked, Plaintiff was required to choose who they should interview, and what evidence they should collect.  It was like Plaintiff was to offer up lambs for the slaughter as she proposed witnesses to be interviewed and then Phillis and Ross chose to ask those witnesses demeaning questions about their own behavior or about Plaintiff.  Then, still hoping that the investigation was not a ruse, and that she could potentially receive justice, Plaintiff tied herself in knots trying to guess what evidence would help Ross and Phillis judge her as a good person who was telling the truth.   The Title IX office kept the determination basis, and credibility determinations and the perpetrator's proposed evidence a secret so Plaintiff was left to anticipate what the investigators wanted to know in order to tip the scales purely by guessing in the case and offer witnesses who had that knowledge. Little did Plaintiff know as she wore herself out trying to anticipate what Defendants thought was relevant that the investigation was just one big process in retaliation such that she was running on a treadmill that would never get her to the finish line.

82. At Augustana College, investigators will not speak to witnesses unless the victim knows the name of that witness on her own – even if the investigator knows of that witness's existence and the fact that the witness has relevant information. This is another violation of Title IX and state law. Put simply, when a victim comes forward with a sexual assault

complaint, the school is required to investigate. It is required to interview witnesses, including the perpetrator. Augustana College turns Title IX on its head and forces Complainants to be their own investigators and prove their case while perpetrators can sit back, not show up for interviews, watch the investigation unfold, and escape consequences. This is not equitable, and it is a violation of Title IX.

83.  This also burdened Plaintiff, who was suffering the aftermath of an assault,  with a guessing game – having to guess what Defendants Schnack, Phillis, Ross, and Augustana College wanted her to name as evidence in her case and what hoops they wanted her to jump through. If she failed to read their minds, she risked losing her Title IX complaint because she failed to provide the witness or evidence investigators wanted.

84. Other past sexual assault victims at Augustana College complained about this Title IX process for similar reasons – namely that female victims are forced by the school to conduct their own investigations and jump through hoops while male perpetrators do not receive similar treatment. This directly contravenes Title IX, which requires a college's process be equitable.

85. Augustana College's investigation process in Plaintiff's case: holding her basic rights hostage to confidentiality agreements; selecting a campus officer with a clear conflict of interest as a Title IX investigator; subjecting Plaintiff to an investigation of her sexual history, underage drinking, and other lines of humiliating, re-traumatizing, and victim-blaming questions; attempting to destroy Plaintiff's credibility and reputation; violating Plaintiff's privacy repeatedly; and forcing her to conduct what should have been Augustana College's investigation – was completely discriminatory, inequitable and in violation of Title IX.

86. While Title IX investigations are supposed to be completed in 60 days, Augustana College's ruse of an investigation lasted much longer than that and never came to completion. In an extreme irony, Augustana College used the fact that Plaintiff named witnesses in the investigation as their excuse for extending the investigation timeline.

87. Finally, after 140 days, Augustana College issued an investigation report with no findings, credibility determinations, or conclusions. Instead, the parties were given a report with a factual data dump as filtered through Defendant Phillis' writing (it would have been more helpful if he had merely handed over the raw audio footage of the interviews). Defendants told the parties to review the report, write written responses with arguments, and submit them to a hearing panel that would then make a final determination.

88. Plaintiff submitted a written response. Her response went into detail regarding how all the evidence gathered in the investigation proved that Defendant Conor Larkin was guilty of violating Augustana's sexual harassment and assault policy.

89. Defendant Conor Larkin received this response and asked Plaintiff through Augustana College representatives if she would be willing to proceed with an informal negotiation process instead of a formal hearing with potential discipline as the consequence.

### D. Title IX "Hearing" and Augustana College's Abandonment of the Title IX Process

90. Plaintiff decided she did not want to participate in Defendant Conor Larkin 's proposed informal negotiation, as it seemed that he was attempting to evade consequences after seeing Plaintiff's written arguments. Plaintiff requested a formal hearing which was set for Tuesday, July 14, 2020.

91. In the weeks prior this hearing date, witnesses made plans to take time off work and rearranged their schedules to prepare for and participate in the hearing. Since there was a world-wide pandemic at this time, witnesses made travel arrangements to attend the hearing in-person despite risks.

92. However, on Friday, July 10, 2020 at 8:44 PM – one business day prior to the hearing – Augustana College sent Plaintiff a cryptic letter cancelling the hearing. In this letter, they claimed that Defendant Conor Larkin  raised an assertion on the eve of the hearing that "Augustana College did not have jurisdiction over the Respondent due to his status [as a non-student] at the time of the incident." As a reminder, Augustana College previously assured Plaintiff at the beginning of the "investigation" that Defendant Conor Larkin's non-student status at the time of the assault would have no bearing on the process.

93. Additionally, Defendants informed Plaintiff in this letter that Defendant Conor Larkin had filed a formal complaint against her and that they had accepted that complaint, but refused to discuss the substance of that complaint. Defendant Schnack stated that she was assisting Defendant Conor Larkin to help him "flesh out' the details of his complaint against Plaintiff.

94. These actions by Defendants Schnack and Augustana College constituted further discrimination and retaliation, as both she and Augustana College were clearly assisting Defendant Conor Larkin, the perpetrator, in escaping punishment for sexually assaulting Plaintiff, and in making a retaliatory complaint against Plaintiff.

95. Augustana College did not reschedule the hearing. It never happened. Instead, on July 18, 2020, Augustana College told Plaintiff in a letter that the College did not have jurisdiction over the entire case as Defendant Conor Larkin was not a student at the time

of the assault. Accordingly, there would be no hearing. Thus, Augustana College failed to make any determination as to whether Defendant Conor Larkin had sexually assaulted Plaintiff.

96. In this letter, Augustana College never told Plaintiff whether they investigated Defendant Conor Larkin's "jurisdictional claims." Instead, they just decided to drop the entire complaint, abandon the Title IX investigation process, and excuse the perpetrator.

97. In the same letter, Augustana College further stated: "In light of the nature of this decision, the appeal process set forth in the Investigation and Resolution Procedures does not apply. Nonetheless, the College is providing both parties the opportunity to appeal…"

98. On July 27, 2020, Plaintiff submitted an appeal letter to Augustana College detailing these Title IX violations.

99. On August 14, 2020, Schnack submitted a letter to Plaintiff denying her appeal, again pointing to Defendant Conor Larkin's status as non-student at the time of the assault as reasonable grounds to dismiss her complaint.

100.  Defendant Conor Larkin was never fully investigated, nor was his sister, Erin Larkin who physically assaulted Plaintiff.  Both escaped any scrutiny of or consequences for their actions.

101.  Plaintiff notified Augustana College that their actions described herein caused her significant emotional distress, describing their process "as inhumane as the assault" she survived.

102.  Subjecting Plaintiff to this entire process – a process that included but was not limited to sexist and humiliating questioning by Augustana College officials, an overwhelming burden for Plaintiff in pushing the investigation forward when Augustana

College officials showed no interest, and where Augustana College repeatedly violated

Plaintiff's rights in the Title IX investigation including her right to privacy – when

Augustana College had no intention of conducting the investigation or reaching a

conclusion, was retaliatory against Plaintiff for filing a Title IX complaint.

103.       Plaintiff would have endured less humiliation, trauma, and harm had she not

involved Augustana College in the aftermath of the assault she suffered. Defendants

actions in this case go beyond the deliberate indifference standard and were actively

harmful to Plaintiff. Defendants Augustana College, Schnack, Phillis, and Ross's actions

were discriminatory, harassing, retaliatory, and contributed to the hostile environment

Plaintiff endured at Augustana College.


### IV.       CLAIMS

#### COUNT I
**VIOLATION OF TITLE IX – DELIBERATE INDIFFERENCE**
Against Defendant University
(20 U.S.C. § 1681, et seq)
(Deliberate Indifference to Sexual Harassment and Hostile Environment)

104.       All paragraphs above are incorporated herein by reference.

105.       The sex-based harassment articulated above was so severe, pervasive, and

objectively offensive that it deprived Plaintiff of access to educational opportunities or

benefits provided by Defendant Augustana College.

106.       The Defendant Augustana College was deliberately indifferent to severe,

pervasive and objectively offensive sexual harassment against Plaintiff in violation of

Title IX of the Education Amendments of 1972,  20 U.S.C. § 1681(a) ("Title IX"),

because a) Plaintiff was a member of a protected class; b) she was subjected to sexual

harassment in the form of a sexual assault by a guest and visitor at Defendant Augustana College; c) she was subjected to harassment in the form of gender violence based on her sex; and d) defendant was deliberately indifferent to the harassment Plaintiff suffered in that Defendant Augustana College failed to have proper policies in place to respond to sexual harassment, failed to properly enforce policies for responding to sexual harassment, and failed to  investigate and/or address the sexual assault and subsequent harassment.

107.     Defendant Augustana College and its officials had actual knowledge of the sexual assault of Plaintiff and failed to investigate or respond to that harassment.

108.     Defendant Augustana College's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Augustana College's education program in violation of Title IX.

109.     Defendant Augustana College failed to take immediate, effective remedial steps in response to the sexual harassment and instead acted with deliberate indifference toward Plaintiff.

110.     Defendant Augustana College persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

111.     Defendant Augustana College engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults be fully investigated thereby furthering its lack of response.

112.     This policy and/or practice showed gender discrimination in that it was disparate treatment of females and had a disparate impact on female students. Defendant Augustana College's disparate treatment of female students and clear gender discrimination is evident in its:

  a.  Attempted coercion of students, including Plaintiff seeking a Title IX investigation (and their support persons) to sign an unconscionable confidentiality agreement to proceed with the Title IX process. Signing this confidentiality agreement would have barred them from seeking justice in civil courts;

  b.  Failure to provide students, including Plaintiff with information or resources as guaranteed under Illinois state law and Federal Law, such as the Confidential Advisor and accommodations (per their incorrect written policy stating that only disabled students could receive accommodations) as described herein;

  c.  Failure to provide interim safety measures for students, leading to a chilling effect on students reporting sexual assault, seeking said safety measures, and a Title IX investigation;

  d.  Violating the privacy of students reporting or interviewing in investigations of sexual abuse and sexual harassment;

  e.  Favoring males throughout the investigative and disciplinary process in permitting a male perpetrator to skip interviews, delay the investigation, and dismiss the investigation;

  f.  By displaying gender discriminatory attitudes throughout the investigation process;

  g.  By providing the male student significantly more rights than the female student;

h.  By placing the burden of identifying and locating witnesses and evidence in the investigative process on the female student, particularly when the male student refused to cooperate without any consequences;

i.  By displaying gender bias at all levels of the investigation process by not following state and federal law and by not providing equity throughout the process; and

j.  By demonstrating actions that punished Plaintiff for her reporting of the harassment.

113.    Defendant was further deliberately indifferent to the acts of harassment of the student, Plaintiff, in that it:

a.  Failed to enforce their own policies as required under state and federal law regarding the Title IX process;

b.  Failed to conduct and complete a proper Title IX investigation;

c.  Permitted blatant gender bias by Defendant Augustana College's employees without correction or consequence;

d.  Allowed employees to sexually harass and intimidate Plaintiff, a victim of sexual assault;

e.  Failed to seek out or properly review evidence or witnesses;

f.  Violated Plaintiff's privacy with a publicly viewable Google calendar that showed Plaintiff's name and the names of witnesses who were being interviewed;

g.  Inflicted trauma on Plaintiff over the course of the investigation;

h.  Permitted employees to retaliate against Plaintiff to damage the Plaintiff's credibility and reputation in the ultimately incomplete investigation;

i.   Cancelled the full hearing Plaintiff was entitled to under Title IX;

j.   Assisted Defendant Conor Larkin in making his own counter-complaint against
     Plaintiff; and

k.   Failed to come to a resolution in the Title IX process, essentially abandoning it
     altogether after the perpetrator made the last-minute "jurisdictional" claim that
     Defendant Augustana College previously promised Plaintiff was irrelevant to the
     Title IX process.

114.   Plaintiff has suffered emotional distress and psychological damage, and
humiliation as a direct and proximate result of Defendant Augustana College's deliberate
indifference to her rights under Title IX.


**COUNT II**
VIOLATION OF TITLE IX – Hostile Environment
Against Defendant University
(20 U.S.C. § 1681, et seq.)
(Failure to eliminate hostile environment as required by Title IX)

115.   All paragraphs above are incorporated herein by reference.

116.   Defendant Augustana College failed to eliminate a hostile environment against
Plaintiff in the following ways:

a.   By disciplining Plaintiff for having a direct trauma reaction on Campus following
     her report of Sexual assault to Defendant;

b.   By allowing their Title IX investigators to engage in sexual harassment and
     retaliation against Plaintiff for asserting her rights under Title IX;

c.   By failing to inform Plaintiff about her right to a Confidential Advisor who could
     inform her about her rights, resources, and possible accommodations;

d.  By failing to inform Plaintiff and witnesses regarding the amnesty policy mandated under Illinois state law and chastising Plaintiff to underaged drinking;

e.  By having a gender discriminatory investigation process that had the purpose to humiliate Plaintiff and undermine  her credibility.;

f.  By violating Plaintiff's privacy in sharing information about her Title IX complaint with other persons and on the internet;

g.  By only forcing Plaintiff to reveal the details of her sexual assault to persons who were previously involved in retaliating against her for reporting the sexual assault. t;

h.  By forcing Plaintiff to direct her own Title IX investigation as Defendant Augustana College refused to pursue witnesses or evidence without Plaintiff specifically guessing who she should name even though Augustana College investigators were trained police officers with the ability to conduct an investigation.;

i.  By treating the male Respondent favorably to the female Plaintiff throughout the Title IX process, and

j.  By failing to complete the Title IX process after subjecting Plaintiff to discriminatory and harmful conditions.

117.    Because of Defendant's actions and/or inactions, Plaintiff faced a hostile educational environment at Augustana College.

118.    Defendant took no corrective action to alleviate this hostile environment and instead accelerated it. This affected Plaintiff's access to her education.

119.     Plaintiff has suffered emotional distress, psychological damage, and humiliation as a direct and proximate result of Defendant Augustana College's violations of her rights to be free from a hostile environment under Title IX.

**COUNT III**
VIOLATION OF TITLE IX - Retaliation
Against Defendant University
(20 U.S.C. § 1681, et seq.)

120.     All paragraphs are incorporated herein by reference.

121.     Defendant Augustana College retaliated and failed to prevent retaliation against Plaintiff as required by Title IX in the following ways:

   a.   Defendant retaliated against Plaintiff for reporting her sexual assault and seeking interim safety measures;

   b.   Defendant Augustana directly retaliated against Plaintiff following her report of Sexual Assault by disciplining her for having a trauma response to the assault on campus;

   c.   Defendant Augustana furthered that retaliation by forcing Plaintiff to use one of the disciplinarians from that retaliatory incident as a Title IX investigator in her formal Complaint against Conor Larkin;

   d.   Defendant Augustana retaliated against Plaintiff by and through its agent Tom Phillis who used this opportunity to gain details about the formal complaint in an interview with Plaintiff to instead humiliate and harass her by asking gender discriminatory, victim-blaming, re-traumatizing, and "slut shaming" questions;

   e.   Defendant Augustana retaliated against Plaintiff by and through its agent Tom Phillis who used interviews with Plaintiff's suggested witnesses to seek

information, irrelevant to the investigation, that would undermine Plaintiff's credibility due to gender stereotypes;

f.   Defendant Augustana College retaliated against Plaintiff by assisting Defendant Conor Larkin with an improper retaliatory complaint against her;

g.   Defendant Augustana College retaliated against Plaintiff by putting Plaintiff through a ruse of a Title IX investigation where she was  required to name every single witness and piece of evidence while Defendant Conor Larkin skipped interviews and obstructed the investigation and the "investigation never came to any conclusion; and

h.   Defendant Augustana College retaliated against Plaintiff by exceeding the 60-day timeline for her investigation to 177 days, only to completely abandon the Title IX process without completion;

122.   Because of Defendant's actions and/or inactions, Plaintiff faced retaliation from Augustana College.

123.   Defendant took no corrective action towards Defendant Conor Larkin, Defendant Erin Larkin, or the employees who engaged in retaliatory action against Plaintiff, which affected her access to her education.

124.   Plaintiff has suffered emotional distress psychological damage and humiliation, as a direct and proximate result of Defendant Augustana College's violations of her rights to be free from retaliation under Title IX.

<u>**COUNT IV**</u>
<u>VIOLATION OF TITLE IX – FAILURE TO INVESTIGATE CONOR LARKIN</u>
Against Defendant University
(20 U.S.C. § 1681, et seq.)
(Failure to investigate as required by Title IX)

125.      All paragraphs above are incorporated herein by reference.

126.      Defendant Augustana College failed to investigate Conor Larkin following

Plaintiff's allegation of sexual assault as required by Title IX in the following ways:

    a.  Defendant Augustana College failed to conduct interviews with witnesses or

        pursue evidence unless Plaintiff specifically knew which witnesses and evidence

        she found through her own investigation. Plaintiff – in effect – had to conduct her

        own investigation because of the college's failure to engage in the Title IX

        investigative process;

    b.  Defendant Augustana College permitted Conor Larkin to skip repeated scheduled

        interviews without consequence such that he was able to see the entire

        investigation unfold before he had to answer any questions; and

    c.  Defendant Augustana College failed to complete an investigation.

127.      Because of Defendant's actions and/or inactions, Plaintiff's allegations of sexual

assault were not investigated as required under Title IX.

128.      Defendant failed to investigate Plaintiff's allegation of sexual assault and failed to

take corrective action when Plaintiff brought this failure to their attention. These failures

affected her access to her education.

129.      Plaintiff has suffered emotional distress, psychological damage, and humiliation

as a direct and proximate result of Defendant Augustana College's violations of her right

to an investigation under Title IX.

## **COUNT V**
### VIOLATION OF TITLE IX-FAILURE TO INVESTIGATE ERIN LARKIN
Against Defendant University
(20 U.S.C. § 1681, et seq.)

130.    All paragraphs above are incorporated herein by reference.

131.    Defendant Augustana College failed to investigate Erin Larkin following

Plaintiff's allegation of physical assault directly connected to sexual harassment by

Defendant Erin Larkin as required by Title IX in the following ways:

  a.    Defendant Augustana College failed to investigate Defendant Erin Larkin for

  physically assaulting and sexually harassing Plaintiff after Plaintiff reported that

  Defendant Erin Larkin assaulted her for being sexually assaulted by Conor

  Larkin; and

  b.    Defendant Augustana College failed to conduct interviews with witnesses or

  pursue an investigation into Erin Larkin's sexually harassing behavior on April

  15, 2018. Because of Defendant's actions and/or inactions, Plaintiff's allegations

  against Erin Larkin of sexual harassment by physical assault were not investigated

  as required under Title IX.

132.    These failures impacted Plaintiff's access to her education.

133.    Plaintiff has suffered emotional distress, psychological damage, and humiliation

as a direct and proximate result of Defendant Augustana College's violations of her right

to an investigation under Title IX.

## COUNT VI
## ASSAULT AND BATTERY
### Against Defendant Conor Larkin

134.     All paragraphs above are incorporated herein by reference.

135.     Defendant Conor Larkin sexually and physically assaulted Plaintiff on April 15, 2018.

136.     Defendant Conor Larkin performed sexual acts and sexual harassment acts upon Plaintiff without her consent causing actual physical harm.

137.     Defendant Conor Larkin acted intending to cause a harmful or offensive contact with Plaintiff

138.     Defendant Conor Larkin placed Plaintiff in imminent apprehension of such a contact.

139.     Defendant Conor Larkin unlawfully touched Plaintiff in a harmful or offensive manner without her consent.  Such contact offends a reasonable sense of personal dignity.

140.     Plaintiff has suffered physical pain, emotional distress, psychological damage, and humiliation and her character and standing in her community have suffered from the actions of Defendant Conor Larkin.


## COUNT VII
## ASSAULT AND BATTERY
### Against Defendant Erin Larkin

141.     All paragraphs above are incorporated herein.

142.     Defendant Erin Larkin physically assaulted Plaintiff by striking her in the face with a hand.

143.     Defendant Erin Larkin slapped Plaintiff across the face on April 15, 2018.

144.     Defendant Erin Larkin unlawfully struck Plaintiff without her consent

145.     Defendant Erin Larkin further placed Plaintiff in imminent apprehension of such a

contact that was harmful and offensive to a reasonable person.

146.     Plaintiff has suffered emotional distress and psychological damage, and her

character and standing in her community have suffered from the actions of Defendant

Erin Larkin.

## COUNT VIII

### VIOLATION OF GENDER VIOLENCE ACT
Against Defendant Conor Larkin
(740 ILCS 82/10)

147.     All paragraphs above are incorporated herein by reference.

148.     Under 740 ILCS 82/10, The Gender Violence Act, "Any person who has been

subjected to gender-based violence as defined in Section 5 [740 ILCS 82/5] may bring a

civil action for damages, injunctive relief, or other appropriate relief against a person or

persons perpetrating the gender-related violence."

149.     "Gender-based violence" is defined under 740 ILCS 82/5 as "(2) A physical

intrusion or physical invasion of a sexual nature under coercive conditions satisfying the

elements of battery under laws of Illinois, whether or not the acts resulted in criminal

charges, prosecution, or conviction."

150.     Defendant Conor Larkin's sexual assault and battery of Plaintiff, who is an adult

female, was a physical invasion of a sexual nature committed upon Plaintiff under

coercive conditions.

151.    Defendant Conor Larkin's sexual assault of Plaintiff was committed at least in part because of Plaintiff's sex and Plaintiff is part of the class of persons 740 ILCS 82/10 was designed to protect.

152.    As a direct and proximate result of the conduct of Defendant Conor Larkin, Plaintiff has suffered, and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT IX

### VIOLATION OF PREVENTING SEXUAL VIOLENCE

### IN HIGHER EDUCATION ACT
Against Defendant Augustana College
(110 ILCS 155 – failure to provide Confidential Advisor)

153.    All paragraphs above are incorporated herein by reference.

154.    Defendant Augustana College violated Plaintiff's rights under Illinois's Preventing Sexual Violence in Higher Education Act.

155.    Specifically, Augustana College failed to inform Plaintiff that she had a right to a Confidential Advisor.

156.    A "Confidential Advisor" is defined in 110 ILCS 155/1 as "a person who is employed or contracted by a higher education institution to provide emergency and ongoing support to student survivors of sexual violence with the training, duties, and responsibilities described in Section 20 of this Act."

157.     According to 110 ILCS 155/20, institutions of higher education "shall provide students with access to confidential advisors to provide emergency and ongoing support to survivors of sexual violence."

158.     110 ILCS 155/20 further states that Confidential Advisors are required to take specific actions, such as informing the survivor about her reporting options and next steps, notifying the survivor about resources and services for survivors of sexual violence, informing the survivor of her rights and the college's responsibilities, providing confidential services for the survivor, and assisting with protective measures for the survivor's safety.

159.     Plaintiff never had the opportunity to be informed or assisted by a Confidential Advisor because Defendant Augustana College denied Plaintiff her rightful access to a Confidential Advisor.

160.     While there is not an explicit private right of action in 110 ILCS 155/20, there is an implied right of action that can be established under Illinois common law. See Metzger v. DaRosa, 209 Ill. 2d 30, 36 (2004).

161.     More specifically, "implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." Id.

162.     Defendant's failure to inform Plaintiff that she had a right to a Confidential Advisor denied her an opportunity to learn about her rights as a sexual assault victim, as

well as resources at Augustana College and accommodations she could have received from Augustana College. 110 ILCS 155/20.

163.     Plaintiff, as a female student and sexual assault victim at a place of higher education, is a member of the class for whose benefit 110 ILCS 155/20 was enacted.

164.     Plaintiff's injury – specifically the denial of her right to a Confidential Advisor who could assist her in knowing her rights, the college's responsibilities, and the accommodations to which she was entitled – is one that 110 ILCS 155/20 was designed to prevent.

165.     A private right of action is consistent with the purpose of the statute, which is to prevent sexual violence in institutions of higher education in the state of Illinois.

166.     Implying a private right of action is necessary to provide an adequate remedy for violations of 110 ILCS 155/20.

167.     As a result of Defendant's actions and/or failure to act, Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered as a direct and proximate result of Defendant Augustana College's violation of her rights under the Violation of Preventing Sexual Violence in Higher Education Act.

## COUNT X
### VIOLATION OF PREVENTING SEXUAL VIOLENCE
### IN HIGHER EDUCATION ACT
Against Defendants Augustana College and Defendants Schnack, Ross, and Phillis
(110 ILCS 155/10 – Comprehensive Policy Violation)

168.     All paragraphs are incorporated herein by reference.

169.     Defendant Augustana College and their agents, Defendant Schnack, Ross, and Phillis, acting in the course and scope of their employment, violated 110 ILCS 155/10,

Section 3, during the Title IX investigation. More specifically, the statute requires

colleges to adopt a comprehensive policy that includes "without limitation…(ii)

identifying and locating witnesses…[and] (iii) contacting and interviewing the

respondent…"

170.     Defendants violated this statute by maintaining a policy that relieved them of

having to identify witnesses unless Plaintiff had identified them herself. That is not

Plaintiff's responsibility. The statute makes it clear that this duty lies with the

Defendants.

171.     Defendant Augustana College, furthermore, violated this statute when they failed

to interview Defendant Conor Larkin. They permitted respondent to go without an

interview after multiple cancellations without explanation or consequence. Again, this is

in violation of the Illinois statute.

172.     While there is not an explicit private right of action in 110 ILCS 155/10, there is

an implied right of action that can be established under Illinois common law. See

Metzger v. DaRosa, 209 Ill. 2d 30, 36 (2004).

173.     More specifically, "implication of a private right of action is appropriate if: (1) the

plaintiff is a member of the class for whose benefit the statute was enacted; (2) the

plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is

consistent with the underlying purpose of the statute; and (4) implying a private right of

action is necessary to provide an adequate remedy for violations of the statute." Id.

174.     Defendant failed to have and/or maintain a policy that complied with 110 ILCS

155/10 – specifically, failing to identify and locate witnesses, as well as failing to contact

and interview the respondent.

175.     Plaintiff, as a female student and sexual assault victim at a place of higher

education, is a member of the class for whose benefit 110 ILCS 155/10 was enacted.

176.     Plaintiff's injury – specifically the denial of her right to an adequate investigation

with witnesses identified and located by Defendant Augustana College and denial of her

right to an adequate investigation with an interview of Defendant Conor Larkin by

Defendant Augustana College – is an injury that 110 ILCS 155/10 was designed to

prevent.

177.     A private right of action is consistent with the purpose of the statute, which is to

prevent sexual violence in institutions of higher education in the state of Illinois.

178.     Implying a private right of action is necessary to provide an adequate remedy for

violations of 110 ILCS 155/10.

179.     As a result of Defendant's actions and/or failure to act, Plaintiff has suffered

emotional distress and psychological damage, and her character and standing in her

community have suffered as a direct and proximate result of Defendant Augustana

College's violation of the above provisions of the Violation of Preventing Sexual

Violence in Higher Education Act.

## COUNT XI

### VIOLATION OF PREVENTING SEXUAL VIOLENCE

### IN HIGHER EDUCATION ACT
Against Defendants Augustana College and Defendant Phillis
(110 ILCS 155/10 – Comprehensive Policy Violations)

180.     All paragraphs are incorporated herein by reference.

181.     Defendant Augustana College and their agent, Defendant Phillis, acting in the

course of his employment, violated 110 ILCS 155/10 during the Title IX investigation.

More specifically:

a. 110 ILCS 155/10, section 1, which requires higher education institutions to have "a definition of consent that, at a minimum recognizes that…(iii) a person's manner of dress does not constitute consent, (iv) a person's consent to past sexual activity does not constitute consent to future sexual activity…(vii) a person cannot consent to sexual activity if that person is unable to understand the nature of the activity or give knowing consent due to…(A) the person is incapacitated due to the use or influence of alcohol or drugs…"

b. 110 ILCS 155/10, section 10, which requires institutions of higher education "to include an amnesty provision that provides immunity to any student who reports, in good faith, an alleged violation of the higher education institution's policy to a responsible employee…so that the reporting student will not receive a disciplinary sanction by the institution for a student conduct violation, such as underage drinking…"

182. Augustana College and Phillis's questioning of Plaintiff regarding what she was wearing, if she was looking for "a good time," and details regarding her sexual history violated 110 ILCS 155/10, section 1. These demeaning and humiliating questions demonstrate that Defendants have failed to adopt the minimum definition of "consent" required by Illinois state law.

183. Augustana College and Phillis's failure to inform Plaintiff and witnesses regarding the Amnesty Policy as mandated by 110 ILCS 155/10, section 10, as well as chastising Plaintiff and witnesses for engaging in underaged drinking, was a violation of this statute.

184.    While there is not an explicit private right of action in 110 ILCS 155/10, there is

an implied right of action that can be established under Illinois common law. See

Metzger v. DaRosa, 209 Ill. 2d 30, 36 (2004).

185.    More specifically, "implication of a private right of action is appropriate if: (1) the

plaintiff is a member of the class for whose benefit the statute was enacted; (2) the

plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is

consistent with the underlying purpose of the statute; and (4) implying a private right of

action is necessary to provide an adequate remedy for violations of the statute." Id.

186.    Defendant failed to have and/or maintain a policy that complied with 110 ILCS

155/10 – specifically, failing to uphold the bare minimum of 110 ILCS 155/10(1)'s

definition of "consent" over the course of their "investigation" and failing to inform

Plaintiff and witnesses about Defendant College's amnesty policy as required under 110

ILCS 155/10 (10).

187.    Plaintiff, as a female student and sexual assault victim at a place of higher

education, is a member of the class for whose benefit 110 ILCS 155/10 was enacted.

188.    Plaintiff's injuries – specifically the emotional damage and re-traumatization of

Defendant Augustana and Defendant Phillis's discriminatory lines of questioning over

the course of the investigation, as well as the chilling impact to the sexual assault

investigation as a result of failing to inform Plaintiff and witnesses regarding said

amnesty policy– are injuries that 110 ILCS 155/10 was designed to prevent.

189.    A private right of action is consistent with the purpose of the statute, which is to

prevent sexual violence in institutions of higher education in the state of Illinois.

190.     Implying a private right of action is necessary to provide an adequate remedy for violations of 110 ILCS 155/10.

191.     As a result of Defendant's actions and/or failure to act, Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered as a direct and proximate result of Defendant Augustana College's violation of her rights under the Violation of Preventing Sexual Violence in Higher Education Act.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

A.  Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses in response to these circumstances;

B.  Punitive damages;

C.  Injunctive relief requiring Defendant Augustana College to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault, and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.  Statutory interest;

E.  Costs; and

F.  Reasonable Attorney's fees.

JURY DEMAND

Plaintiff by and through her attorneys, Gorovsky Law LLC, demands a trial by jury.

Respectfully submitted,

*/s/ Nicole E. Gorovsky*
Nicole Gorovsky, MO Bar #51046, IL Bar 6307588
GOROVSKY LAW, LLC
222 S. Meramec Avenue, Suite 202
St. Louis, Missouri 63105
Phone: (314) 272-3255
Fax:    (314) 787-6101
Nicole@Gorovskylaw.com

ATTORNEY FOR PLAINTIFF