E-FILED
Thursday, 24 March, 2022  03:39:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| GRACE O'SHEA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-04243-SLD-JEH |
| | ) | |
| AUGUSTANA COLLEGE, TOM PHILLIS, | ) | |
| KYLEE ROSS, LAURA SCHNACK, | ) | |
| CONOR LARKIN, and ERIN LARKIN, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

Before the Court are Defendants Conor Larkin and Erin Larkin's (collectively, the "Larkin Defendants") motion to dismiss, ECF No. 26; Defendants Augustana College, Tom Phillis, Kylee Ross, and Laura Schnack's (collectively, the "College Defendants") motion to dismiss, ECF No. 28; the College Defendants' motion for leave to file a reply, ECF No. 33; and the Larkin Defendants' motion for leave to file a reply, ECF No. 34.  For the following reasons, the Larkin Defendants' motion to dismiss is GRANTED, the College Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART, the Larkin Defendants' motion for leave to file a reply is GRANTED, and the College Defendants' motion for leave to file a reply is GRANTED.

**BACKGROUND[1]**

Augustana College ("Augustana") is a private liberal arts college in Rock Island, Illinois that receives federal financial assistance via students' financial aid and federal grants.  Plaintiff

---

[1] When reviewing a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff."  *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The factual background is therefore drawn from Plaintiff's first amended complaint, ECF No. 23.

Grace O'Shea was a student at Augustana residing on the college's campus between 2016 and May 2020.  Conor Larkin was a guest of or a student at Augustana during all times relevant to Plaintiff's complaint.  Erin Larkin was a student at Augustana during all times relevant to Plaintiff's complaint.  Conor and Erin are siblings.  Phillis, Ross, and Schnack were, at all times relevant to Plaintiff's complaint, employees of Augustana: Phillis was the Chief of Campus Police, Ross was a campus police officer, and Schnack was the Title IX Coordinator.

On or about April 15, 2018, Conor sexually assaulted Plaintiff at the 2nd Avenue Bar in Rock Island, Illinois.  That weekend, Conor was in Rock Island to visit Augustana as a prospective student and to visit his sister.  Before arriving at the bar, Plaintiff had been drinking heavily and was impaired to the point of losing consciousness.  She was under the age of 21 and was initially denied entry to the bar, but after a bouncer recognized a friend who was with Plaintiff, they were granted entry.  Plaintiff consumed more alcohol while at the bar, and she was visibly intoxicated according to several witnesses.

Conor approached Plaintiff several times in the bar, grabbing her and acting "aggressively intimate" with her.  First Am. Compl. 4, ECF No. 23.  Plaintiff did not recognize him and was confused that he was acting so intimately with her.  She separated herself from Conor and tried to find her friends, but he persisted in his advances.  Witnesses saw Conor touching and kissing Plaintiff as if he were her intimate partner.  One witness was disturbed by his behavior and asked Plaintiff if she was okay, but Conor did not let her answer—he "snapped back that Plaintiff was fine."  *Id*. at 5.  Erin approached Conor and told him that he was being "creepy" and to stay away from Plaintiff, but he did not move away from Plaintiff.  *Id*.

Eventually, Conor led Plaintiff away from the dance floor; she thought that they were going to the bar for another drink.  He led her into a stall in the men's restroom.  Conor then

2

sexually assaulted Plaintiff.  Plaintiff was confused and horrified and tried to pull him off of her, but Conor refused to stop.  Plaintiff never gave consent for any sexual activity.

Erin entered the men's restroom to look for her brother, and she yelled for him through the stall door.  Conor told his sister to go away; Plaintiff used the distraction to get dressed.  Conor and Erin had a "yelling match," and he finally opened the stall door.  *Id.* at 6.  Erin confronted Plaintiff and called her a "ho"; she then slapped Plaintiff across the face.  Plaintiff eventually escaped the bathroom.

One of Plaintiff's friends reported the assault to Augustana the morning of April 15, 2018.  Plaintiff reported the assault to the police on April 16, 2018.  That same day, she disclosed the assault to a professor, who reported it to Schnack, the Title IX Coordinator for Augustana.  Plaintiff made an official report with Schnack and the Rock Island police.

At the time of the assault, and for more than a year afterward, Plaintiff did not know the identity of the man who had sexually assaulted her.  A friend who had been with her that night told her that her description of the woman who had slapped her sounded like Erin.  Plaintiff later learned that Erin's brothers had been visiting her that weekend and that one of the brothers was a prospective Augustana student.  Plaintiff asked one of Augustana's deans if the administration could prevent him from being accepted to the college because he had sexually assaulted her, but the dean said that "there was not a mechanism to have a formal investigation of a prospective student."  *Id*. at 9.  Conor was later recruited by Augustana to play lacrosse.

On May 3, 2019—after the assault but before Conor began attending Augustana—Plaintiff and other female students were in the women's bathroom in her dormitory on campus, "in various stages of undress," when a nineteen-year-old male Resident Advisor ("RA") entered the restroom and grabbed Plaintiff's arm.  *Id*.  Plaintiff was "triggered" by this due to her

previous sexual assault and "cussed at the RA and told him to get out of the women's bathroom." *Id*. The RA refused to leave, and the police were called; Officer Ross showed up. Plaintiff was disciplined for her reaction to the RA entering the bathroom and was forced to apologize to the RA.

In September 2019, Plaintiff saw Conor walking on the Augustana campus and recognized him. She contacted the Title IX office, who told her that she could file a complaint. But one of Augustana's Deputy Title IX Coordinators asked her to instead work it out with Conor through a process of reconciliation, with the goal of Plaintiff forgiving Conor for the assault. Plaintiff sought but was denied interim safety measures from Augustana, apart from the offer of a mutual no contact order, which would also punish Plaintiff if she accidentally came into contact with Conor. She ultimately filed a formal Title IX complaint against Conor on January 23, 2020. At that time, Plaintiff asked the Title IX office if it would be an issue that Conor was not enrolled at Augustana at the time of the assault and was assured that it did not matter. She was also assured that it did not matter that the assault took place off campus.

Throughout the spring of 2020, Plaintiff went through the Title IX process. As part of that process, Augustana required Plaintiff to sign a contract where she agreed to full confidentiality, effectively waiving her right to litigate under Title IX before a court of law. Phillis and Ross were selected as the investigators. During the investigation, Phillis questioned Plaintiff about the night of the incident and her sexual history. He asked her "whether on the night of the assault she was 'looking for a "good time,"' if she was wearing undergarments, how tight her jeans were, and how low-cut her shirt was." *Id*. at 16. And although there was a policy for amnesty in discussing any student conduct violations, such as underage drinking, that may have occurred prior to an assault, Phillis failed to advise Plaintiff and witnesses of this policy and

4

instead "repeatedly asked [Plaintiff] and witnesses how they were able to enter a bar and get alcohol while underaged and expressed disappointment with her and these witnesses for doing so." *Id*. at 17.  He also "s[ought] humiliating information about her past from Plaintiff and witnesses, intimidate[ed] her disclosed witnesses, and ask[ed] her friends to discredit her 'character'" and, further, "revealed confidential information about Plaintiff's assault to others." *Id*.  Ross maintained a publicly viewable calendar listing the names of parties navigating the Title IX process, including Plaintiff.  Plaintiff had to conduct parts of the investigation herself— she had to decide who they should interview and what evidence they should collect.  Augustana also allowed Conor to delay the investigation process by skipping multiple interviews without consequence.

After 140 days, Augustana "issued an investigation report with no findings, credibility determinations, or conclusions." *Id*. at 21.  The parties were then given the chance to submit written responses.  Plaintiff turned down Conor's request for an informal negotiation process; a formal hearing was set for July 14, 2020.

On July 10, 2020, Augustana sent Plaintiff a letter cancelling the hearing.  The letter claimed that Conor had raised the argument that Augustana did not have jurisdiction over Conor because he was not a student at the time of the alleged assault.  Plaintiff was further informed that Conor had filed a formal complaint against her, which Augustana had accepted.  Schnack was assisting Conor "to help him 'flesh out' the details of his complaint against Plaintiff." *Id*. at 22.  The hearing was never rescheduled, and on July 18, 2020, Augustana sent Plaintiff another letter affirming that it did not have jurisdiction over the entire case.  Plaintiff appealed this decision on July 27, 2020; her appeal was denied on August 14, 2020.

Plaintiff initiated this suit on November 24, 2020, Compl., ECF No. 1, and filed an amended complaint on March 5, 2021, First Am. Compl.  Plaintiff brings three claims under Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §§ 1681–88, against Augustana (Counts I, II, and III), First Am. Compl. 24–28; a claim under the Illinois Gender Violence Act ("IGVA"), 740 ILCS 82/1–98, against Conor (Count IV), First Am. Compl. 29–30; a claim under the IGVA against Erin (Count V), *id*. at 30–31; and three claims under the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/1–99, against various permutations of the College Defendants (Counts VI, VII, and VIII), First Am. Compl. 31–37. The instant motions followed.

## DISCUSSION

### I.    Motions for Leave to File Replies

Both the College Defendants and the Larkin Defendants have filed motions for leave to file a reply, attaching their proposed replies as exhibits.  *See* College Defs.' Mot. Leave File Reply; Larkin Defs.' Mot. Leave File Reply.  Plaintiff does not oppose either motion.  *See* College Defs.' Mot. Leave File Reply 2; Larkin Defs.' Mot. Leave File Reply 2.

For all motions not for summary judgment, "[n]o reply to the response is permitted without leave of Court."  Civil LR 7.1(B)(3).  "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). A court may also permit a reply "in the interest of completeness."  *Zhan v. Hogan*, No. 4:18-cv-04126, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).  Because

the proposed replies would be helpful to the Court and in the interest of completeness, the College Defendants' and the Larkin Defendants' motions for leave to file replies are granted.

## II.     Motions to Dismiss

### a.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am*., 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### b.  Analysis

#### i.   College Defendants

The College Defendants ask that the Court dismiss all claims against them for failure to state a claim.  College Defs.' Mot. Dismiss 1–2.  Counts I, II, and III, brought against Augustana only, allege violations of Title IX, First Am. Compl. 24–28; Counts VI, VII, and VIII, brought against various subsets of the College Defendants, allege violations of the Preventing Sexual Violence in Higher Education Act, *id*. at 31–37.  The Court will first address the Title IX claims.

## 1.  Title IX Claims

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "The Supreme Court has interpreted Title IX to provide individual plaintiffs with an implied private right of action to pursue claims of gender discrimination in federal court and has recognized a number of claims that constitute discrimination."  *Doe v. Columbia Coll. Chi*., 933 F.3d 849, 854 (7th Cir. 2019).  Plaintiff alleges various theories of Title IX violations.

## A.  Count I

Count I of the first amended complaint is titled "Deliberate Indifference To Known Sexual Harassment With Regard To Conor And Erin Larkin."  First Am. Compl. 24.  Plaintiff alleges that "[t]he sexual assault by Conor . . . and physical assault by Erin . . . was so severe, pervasive, and objectively offensive that it constitutes sexual harassment under Title IX."  *Id*. She further states that Conor and Erin's presence on campus after the assaults "created a hostile educational environment" which severely affected her educational opportunities and that Augustana "was deliberately indifferent to the hostile environment" and, further, "proactively interfered with [Plaintiff's] Title IX rights by attempting to have Plaintiff enter into a process whereby instead of filing a Title IX complaint, she would sit in a room with the attacker and

'work it out.'" *Id*. at 25.  Plaintiff claims that Augustana's "failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Augustana['s] . . . education program in violation of Title IX." *Id*. at 26.

The parties disagree as to the Title IX theory under which Count I is brought.  Augustana characterizes it as a claim that it was deliberately indifferent to Conor and Erin's sexual harassment of Plaintiff.  College Defs.' Mem. Supp. Mot. Dismiss 5–8, ECF No. 29.  It argues that Plaintiff has failed to plausibly allege a Title IX violation under that theory because the alleged assaults by Conor and Erin took place off-campus, and thus Augustana did not have substantial control over the harassers and the context in which the harassment occurred, as required for a deliberate indifference claim.  *Id*.  Plaintiff contends that Augustana "misconstrue[d]" her claim in Count I—she argues that she actually alleged that Augustana's own actions after Plaintiff reported her sexual assault directly discriminated against Plaintiff on the basis of her gender, in that Augustana "actively attempted to dissuade her from exercising her Title IX rights," "engaged in a concerted effort to prevent Plaintiff from accessing her rights under the law," and, when she insisted on filing a complaint, "moved forward with a harassing process full of gender discrimination."  Pl.'s Resp. College Defs.' Mot. Dismiss 10–12, ECF No. 31.  Augustana protests that Plaintiff's "recharacteriz[ation] [of] Count I into an entirely different legal claim than the one expressly identified in the" operative complaint "does not give [Augustana] fair notice of what the claim is and the grounds upon which it rests."  College Defs.' Reply 5, ECF No. 33-1 (emphasis omitted) (quotation marks omitted).  Regardless, it argues, Plaintiff has failed to state a claim under either a deliberate indifference or a direct discrimination theory.  *Id*. at 3–10.

In the interest of completeness, the Court will address both of these theories.

## I.  *Deliberate Indifference*

To state a Title IX deliberate indifference claim, a plaintiff must allege that

(1) the harassment was based on sex, (2) it was at an educational institution that was receiving federal funds, (3) the harassment was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities, and (4) the school officials had actual knowledge of the harassment and were deliberately indifferent to it.

*Columbia Coll.*, 933 F.3d at 856.  "[B]oth the 'deliberate indifference' standard and the language of Title IX narrowly circumscribe the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of [the educational institution]."  *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).  The educational institution's liability is limited "to circumstances wherein [it] exercises substantial control over both the harasser and the context in which the known harassment occurs"—for example, where the misconduct was by a student and took place during school hours and on school grounds.  *Id*. at 645–46.

Here, it is clear that the alleged assaults by Conor and Erin took place at a bar off the Augustana campus, First Am. Compl. 4–6, and Plaintiff does not allege that Augustana was sponsoring an event there or otherwise exercised any control over the bar.  Furthermore, at the time of the assaults, Conor was not a student at Augustana.  *Id*. at 3.  As such, Augustana did not exercise control over the context in which the assaults occurred or over Conor as a non-student.  *See Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 512 (7th Cir. 2010) (finding that the plaintiff failed to state a claim for deliberate indifference where she was harassed by a teacher after he had ended his employment with the defendant school district because the defendant lacked substantial control over the teacher at the time of the harassment);

*Brown v. State of Arizona*, 23 F.4th 1173, 1180 (9th Cir. 2022) (finding no deliberate

indifference liability under Title IX where one student assaulted another off-campus because the

university did not have control over the off-campus environment in which the assault took

place).  And Plaintiff does not allege that she had any further harassing interactions with Conor

or Erin.  Thus, Plaintiff cannot state a claim for Augustana's deliberate indifference to sexual

harassment by Conor and Erin.

II.     <u>*Direct Discrimination*</u>

As a preliminary matter, the Court does not find, should Plaintiff truly have intended to

bring Count I as a direct discrimination claim, that the first amended complaint gives Augustana

fair notice of this.  *See Huri v. Off. of the Chief Judge of the Circuit Ct. of Cook Cnty.*, 804 F.3d

826, 832 (7th Cir. 2015) ("[T]he complaint must give the defendant fair notice of what the claim

is and the grounds upon which it rests.").  Count I is clearly and visibly titled "Deliberate

Indifference To Known Sexual Harassment With Regard To Conor And Erin Larkin," and the

allegations in the claim specifically concern "the hostile environment that existed on campus due

to the Larkins," to which Augustana was allegedly deliberately indifferent.  First Am. Compl.

24–26.  It would be absurd to expect Augustana to infer from this text that the claim actually has

nothing to do with Conor and Erin's assaults and, rather, that it concerns Augustana's own

discrimination against Plaintiff.  The paragraph alleging that Augustana "proactively interfered

with [Plaintiff's] Title IX rights" perhaps hints at more than a deliberate indifference claim, but

in light of the rest of the text of Count I, it is not sufficient to provide Augustana with fair notice.

*See id.* at 25.

Regardless, Plaintiff does not plausibly plead a claim of direct discrimination in the first

amended complaint.  To state a claim for direct discrimination pursuant to Title IX, a plaintiff

11

must allege "(1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Columbia Coll*., 933 F.3d at 854; *see Doe v. Purdue Univ*., 928 F.3d 652, 667–68 (7th Cir. 2019) (noting that at the motion to dismiss stage, the relevant question is whether "the alleged facts, if true, raise a plausible inference that the [educational institution] discriminated against [the plaintiff] 'on the basis of sex'"). The Court cannot infer from the allegations contained in the first amended complaint that Augustana discriminated against Plaintiff because of her gender.

Plaintiff makes various conclusory allegations that Augustana's actions were discriminatory. *See, e.g*., First Am. Compl. 14 ("Defendants engaged repeatedly in discriminatory behavior against Plaintiff . . . ."). But she does not identify instances in which she or other women were treated differently than men during the investigation. For example, she does not allege that Augustana credited evidence from men during the investigation while discrediting all evidence from women, nor does she allege that Augustana harassed her, as a woman, during the investigation while allowing men to proceed without obstacle. *Cf. Purdue Univ*., 928 F.3d at 669 (finding allegations of gender discrimination plausible because the panel charged with resolving the claim chose to credit the female alleged victim's account based on her accusation alone and refused to hear from the alleged perpetrator plaintiff's witnesses, including his male roommate, and because an involved party posted an article on its Facebook account the same month titled "Alcohol isn't the cause of campus sexual assault. Men are."); *Doe v. Baum*, 903 F.3d 575, 586–87 (6th Cir. 2018) (finding that an accused perpetrator plausibly alleged gender discrimination because the Board rejected all of the male testimony, explaining that they lacked credibility because many of them were fraternity brothers of the accused perpetrator,

12

while crediting exclusively female testimony, even though several of them were sorority sisters of the alleged victim).

Plaintiff claims that actions by Augustana that discriminated against victims of sexual assault constitute gender discrimination. *See, e.g*., First Am. Compl. 12 ("The entire 'Title IX' process at Augustana assumes it is the victim's responsibility to forgive the attacker for her own growth and accordingly is based on principles of gender discrimination."). But the Seventh Circuit has squarely rejected the idea that an action that discriminates against accused perpetrators of sexual assault but applies equally to men and women is gender discrimination. *See Columbia Coll*., 933 F.3d at 855 (disagreeing with an alleged perpetrator's contention that a college's attempts to comport with a letter addressing the problem of sexual violence at educational institutions, which "applie[d] equally to male and female students accused of sexual assault," "demonstrate[d] an anti-male bias"). Plaintiff's allegations here are similarly "divorced from gender," *id*. at 856; she does not allege, for example, that only female victims of sexual assault were expected to forgive their attackers.

Plaintiff does allege that she was subjected to "sexist . . . questions" during the investigation, First Am. Compl. 23, in that Phillis asked her "questions about her sexual history, whether on the night of the assault she was 'looking for a "good time,"' if she was wearing undergarments, how tight her jeans were, and how low-cut her shirt was," *id*. at 16. While this suggests to the Court that Plaintiff might be able to successfully re-plead a claim for direct discrimination, these allegations, without more clarity as to how they relate to sex discrimination, and absent any indication that male victims were not subject to similar victim-blaming questions, fail to plausibly plead that Augustana's "investigation . . . was tainted by an anti-[female] bias." *See Columbia Coll*., 933 F.3d at 856.

13

Augustana's motion to dismiss Count I of the first amended complaint is, accordingly, dismissed.  The Court will, however, give Plaintiff a chance to re-plead her direct discrimination claim.  *See* Pl.'s Resp. College Defs.' Mot. Dismiss 12 n.1 (requesting leave to replead the direct discrimination claim against Augustana); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to file an amended complaint] when justice so requires.); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored.").[2]

### B.  Count II

Count II is titled "Hostile Environment Created by Sexual Harassment Due to Augustana Actions."  First Am. Compl. 26.  In the claim, Plaintiff alleges that Augustana "created, and failed, to eliminate a hostile environment against Plaintiff through [its] own actions" by disciplining Plaintiff for her reaction to the R.A. entering the women's bathroom; "[b]y allowing [its] Title IX investigators to engage in a fake and harassing 'investigation process'"; through its discriminatory investigation process, which "had the purpose [of] humiliat[ing] Plaintiff and undermin[ing] her credibility"; by violating her privacy by publicly sharing information about her Title IX complaint; by manipulating her into revealing details about her sexual assault to people who had previously retaliated against her; and by failing to complete the Title IX process. *Id*. at 26–27.

Again, the parties disagree as to the theory underlying Count II.  Augustana complains that "Plaintiff mixes terminology together in Count II, so it is difficult to decipher her precise legal theory" but appears to characterize it, similar to Count I, as a claim for a hostile

---

[2] In its reply, Augustana argues that Plaintiff also failed to allege that she was excluded from participation in or denied the benefits of an educational program, one of the elements required to state a claim for direct discrimination. College Defs.' Reply 5–7.  Should Plaintiff choose to re-plead her direct discrimination claim and Augustana choose to renew this argument in a second motion to dismiss, the Court will address the issue at that time.

environment based on the assaults by Conor and Erin.  *See* College Defs.' Mem. Supp. Mot.

Dismiss 6–9 & n.5.  Plaintiff clarifies that Count II proceeds under a theory of deliberate

indifference—Augustana was deliberately indifferent to its own harassment of Plaintiff on the

basis of her sex.  Pl.'s Resp. College Defs.' Mot. Dismiss 13–14.

   The Court finds that Count II's text supports Plaintiff's interpretation: it is clear that, for

purposes of Count II, the hostile environment alleged was created by Augustana, not by the

Larkins.  *See* First Am. Compl. 26–27.  As noted above, to state a claim for deliberate

indifference, Plaintiff must allege that Augustana had knowledge of, and was deliberately

indifferent to, an individual's harassment of Plaintiff based on her sex that was so severe,

pervasive, and offensive that it deprived Plaintiff of educational opportunities.  *See Columbia*

*Coll.*, 933 F.3d at 856.  For purposes of this analysis, the Court will assume that Plaintiff intends

to allege that Augustana was deliberately indifferent to the actions of its employees, although

this is far from clear from the text of the complaint.[3]  Most of the alleged acts of harassment to

which Plaintiff points, such as disciplining her for her trauma response to the bathroom incident,

sharing information about her Title IX complaint, and failing to complete the Title IX process,

may imply discrimination based on her status as a sexual assault victim, but absent allegations

that male victims were treated differently, these allegations do not show harassment based on

*sex*.  *See supra* Section II(b)(i)(1)(A)(II).  Her allegations as to the questions Phillis asked her

during the investigation, with more detail, could potentially imply gender discrimination, but as

they are, their relation to gender discrimination is too unclear.  *See id.*  As such, while the Court

---

[3] It appears from her response that Plaintiff intended to allege in Count II that *Augustana* committed the harassment. *See* Pl.'s Resp. College Defs.' Mot. Dismiss 15 ("Plaintiff pled in Count II that Augustana was the harasser.").  If the party that committed the harassment is the same as the party that was deliberately indifferent, the inquiry essentially collapses into itself and becomes a direct discrimination claim.  The deliberate indifference theory is intended to allow plaintiffs to hold educational institutions responsible for their failure to respond to harassment by other individuals.  *See Davis*, 526 U.S. at 641–47 (discussing that the deliberate indifference standard allows schools to be held liable for the actions of third parties over whom they exercise substantial control).

finds that Plaintiff has failed to state a claim in Count II, it will grant Plaintiff leave to replead the claim.  Plaintiff is cautioned to clarify in any amended complaint who committed the harassment and how and when Augustana learned of it.  She must also allege with greater specificity how she was deprived of access to her education—conclusory statements are not sufficient.  *See, e.g.*, First Am. Compl. 24 ("Throughout this time, Plaintiff was unable to focus on her education or her athletics.  She suffered educational harm in that she was not able to participate in all educational or athletic opportunities."); *id*. at 27 ("Plaintiff suffered emotional distress, psychological damage, and humiliation and was denied access to her educational and athletic opportunities as a direct and proximate result of . . . Augustana['s] [inaction].").

The Court thus grants Augustana's motion to dismiss Count II but grants Plaintiff leave to replead the claim.

### C.  Count III

In Count III, Plaintiff alleges that Augustana retaliated against her for reporting sexual harassment.  First Am. Compl. 28.  "To establish a Title IX retaliation claim [a plaintiff] must show: (1) he engaged in protected activity under Title IX, (2) [the defendant] took a materially adverse action against him, and (3) there was a but-for causal connection between the two." *Columbia Coll.*, 933 F.3d at 857. "[A]n adverse action is one that a reasonable [student] would find to be materially adverse such that the [student] would be dissuaded from engaging in the protected activity."  *Burton v. Bd. of Regents of Univ. of Wis. Sys*., 851 F.3d 690, 696 (7th Cir. 2017) (quotation marks omitted) (emphasizing that "[n]ot everything that makes [a student] unhappy is an actionable adverse action" (first alteration in original) (quotation marks omitted)). As for the third element, "[a] Title IX [retaliation] claim fails if the plaintiff has not alleged some retaliatory motive connecting the protected activity to the adverse action."  *Doe v. Columbia*

*Coll. Chi.*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017) (quotation marks omitted), *aff'd*, 933 F.3d 849. Augustana argues that the retaliation claim must be dismissed because Plaintiff has failed to allege an actionable adverse action and a retaliatory motive. College Defs.' Mem. Supp. Mot. Dismiss 17–18.[4]

The Court finds that Plaintiff has plausibly alleged both of these elements. Plaintiff claims that Augustana took a variety of adverse actions against her, including "subject[ing] [her] to a harassing 'investigation' that was never a real investigation," which included questions designed to humiliate Plaintiff and a deliberate attempt to encourage Plaintiff's friends to destroy her credibility. *See* First Am. Compl. 28.[5] For example, during Phillis's interview of Plaintiff, he asked questions about her sexual history and about the clothing she was wearing the night of the assault. *Id.* at 16 ("[Phillis] asked Plaintiff . . . if she was wearing undergarments, how tight her jeans were, and how low-cut her shirt was."). Phillis also "expressed disappointment" with Plaintiff and her witnesses for entering a bar and drinking while underaged. *Id.* at 17. Further, he sought out "humiliating information about [Plaintiff's] past . . . , intimidat[ed] her disclosed witnesses, and ask[ed] her friends to discredit her 'character.'" *Id.* Being subjected to demeaning questions, purposefully shamed and humiliated, and subjected to a deliberate attempt to have one's character discredited would dissuade a reasonable student from bringing such a

---

[4] Augustana "do[es] not address whether Plaintiff engaged in statutorily protected activity under Title IX." College Defs.' Mem. Supp. Mot. Dismiss 18 n.9.

[5] Plaintiff also alleges that Augustana retaliated against her by disciplining her for her reaction to the incident where the RA entered the bathroom in her dormitory and by assisting Conor with filing a complaint against Plaintiff. First Am. Compl. 28. The Court does not find that it can infer from the text of the first amended complaint that either of those actions were causally connected to Plaintiff's protected activity. Although Plaintiff's reaction to the bathroom incident may have been heightened by her sexual assault trauma, *id.* at 9, Plaintiff's trauma response during an incident that was otherwise totally divorced from either her sexual assault or the Title IX process is simply not sufficient for the Court to be able to infer that the discipline she received was caused by her report of sexual assault. And while Conor may have wanted to file a complaint against Plaintiff to punish her for her complaint against him, Plaintiff does not allege facts from which the Court can infer that Augustana had a retaliatory motive in assisting Conor, as opposed to simply doing its job of accepting complaints from students (indeed, Augustana also accepted Plaintiff's complaint against Conor).

complaint in the first place, and thus these constitute materially adverse actions.  *Burton*, 851 F.3d at 696.

Further, Plaintiff has plausibly pleaded that Augustana took these actions to retaliate against her for reporting the sexual assault she experienced.  *See* First Am. Compl. 28 ("[Augustana's] retaliatory actions were taken in direct retaliation for Plaintiff's protected activity.").  She alleges that Augustana's Title IX process was designed to discourage sexual assault victims from obtaining formal relief—the process of reconciliation pushed by Augustana, for example, "assumes it is the victim's responsibility to forgive the attacker," and the only interim safety measure Augustana offered Plaintiff, a mutual no contact order, "was designed to discourage victims like Plaintiff from seeking help," as the order would also punish Plaintiff if she accidentally ran into Conor.  *See id*. at 11–13.  It is possible to infer from the allegations that Augustana generally wished to discourage and punish sexual assault victims.

In relation to Augustana's specific adverse actions against Plaintiff, she alleges that Phillis's degrading questioning was "intentionally retaliatory" and that questions about her sexual history were in violation of Title IX, Illinois law, and Augustana's policies and so could not have been properly part of the investigatory process.  *Id*. at 16.  There was an amnesty policy in place for discussing underage drinking that may have occurred before a sexual assault, so Phillis's questioning and shaming of Plaintiff and her witnesses for drinking likewise had no legitimate role in the investigation—rather, Plaintiff alleges, it "likely had a chilling effect on relevant testimony in favor of the lack of capacity issues."  *Id*. at 16–17.  And Plaintiff alleges that "Phillis also engaged in . . . retaliatory conduct" by seeking humiliating information about her, intimidating her witnesses, and asking her friends to discredit her—as Plaintiff states,

"[r]ather than focusing on investigating the sexual assault and the perpetrator, Phillis targeted the victim." *Id*. at 17.

It is plausible to infer from these allegations that Augustana took these actions, which should not have been part of the Title IX process, to punish Plaintiff for pursuing the sexual assault complaint. *See Yap v. Northwestern Univ*., 119 F. Supp. 3d 841, 851–52 (N.D. Ill. 2015) (finding that the plaintiff adequately pleaded that Northwestern took a series of actions against him which were "sufficiently adverse to deter a reasonable student from filing a sexual harassment claim" and which were done "because of his complaints"); *cf. Columbia Coll*., 933 F.3d at 857 (finding that the plaintiff failed to allege retaliation where the complaint did not contain facts indicating the school "wanted to punish [him] for defending himself at the [Title IX] proceeding" or took the alleged adverse action "because they were frustrated that" the plaintiff made a complaint); *Pogorzelska v. Vandercook Coll. of Music*, 442 F. Supp. 3d 1054, 1065 (N.D. Ill. 2020) (dismissing a retaliation claim without prejudice where the "[p]laintiff simply did not plead that [the school's] conduct . . . was intentional or based on a retaliatory motive"); *Yoona Ha v. Northwestern Univ.*, Case No. 14 C 895, 2014 WL 5893292, at *3 (N.D. Ill. Nov. 13, 2014) (finding that the plaintiff failed to state a retaliation claim where she "d[id] not allege that the [alleged adverse action] was causally related to her [protected activity]").

Accordingly, the College Defendants' motion to dismiss Count III is denied.

### 2.   Preventing Sexual Violence in Higher Education Act Claims

In Counts VI, VII, and VIII, Plaintiff brings claims against the four College Defendants under Illinois' Preventing Sexual Violence in Higher Education Act.  First Am. Compl. 31–37. Plaintiff acknowledges that the Act does not have an explicit private right of action but asks the Court to imply a private right of action.  *Id*. at 32, 34, 36.  The College Defendants oppose this,

arguing that, as a federal court, this Court is "not the proper venue to seek—for the very first

time—recognition of an implied right of action under a state statute" and, further, that "it is not

proper to imply a private right of action here."  College Defs.' Mem. Supp. Mot. Dismiss 19–20.

In Illinois, courts imply a private cause of action when "(1) the plaintiff is a member of

the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was

designed to prevent; (3) a private right of action is consistent with the underlying purpose of the

statute"; and (4) the implication of such a right "is necessary to provide an adequate remedy for

violation of the statute."  *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist*., 929 F.3d 865, 870

(7th Cir. 2019) (quoting *Metzger v. DaRosa*, 805 N.E.2d 1165, 1168 (Ill. 2004)).  In situations

where no court has previously determined whether a private right of action exists under a state

statute, many federal courts, including this Court, have decided that "[a]nalyzing the purpose and

intent behind a state statute to determine whether to imply a private right of action seems best

addressed by a state court on first impression" and have thus declined to exercise supplemental

jurisdiction over the claim brought under the state statute.  *See Mulvania v. Sheriff of Rock Island

Cnty*., Case No. 4:10-cv-4080-SLD-JAG, 2013 WL 5422394, at *2 (C.D. Ill. Sept. 27, 2013);

*see, e.g*., *Willis v. Bell*, 669 F. Supp. 229, 232 (N.D. Ill. 1987) (declining to exercise

supplemental jurisdiction where the issue of whether there was an implied private cause of action

under certain provisions of the Illinois Criminal Code was one of first impression because the

"resolution of such novel state-law issues is best left to the Illinois courts"); *Ohata v. Vill. of

Morton Grove*, No. 92 C 8480, 1994 WL 329940, at *3 (N.D. Ill. July 6, 1994) ("Resolution of

th[e] question [of whether a state statute implies a private right of action] is more appropriately

left to the state courts, which are better suited to determine the underlying purpose of the statute

and the remedies necessary to achieve that purpose."); *Bommersbach v. Ruiz*, 461 F. Supp. 2d

743, 756 n.3 (S.D. Ill. 2006) ("Were there any serious question of the Court being required to address the matter of a private right of action under the [relevant state statute], the most prudent course would be to decline to exercise jurisdiction over Count II."); *see also Bommersbach*, 461 F. Supp. 2d at 756 n.3 ("[T]he principle that a federal court, in applying state law, is to be conservative, not innovative, applies with especial vigor when a federal court is asked to imply a private right of action under a state statute." (citation omitted)).

The parties appear to agree that this is an issue of first impression for Illinois courts, *see* College Defs.' Mem. Supp. Mot. Dismiss 19 ("[N]ot a single state court has seen fit to [imply a private right of action] in over five years of the statute's existence." (emphasis omitted)); Pl.'s Resp. College Defs.' Mot. Dismiss 18–20 (failing to cite to any Illinois cases discussing the statute), and indeed, the Court has been unable to find a single case commenting on this issue. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).  Determining for the very first time whether an Illinois statute implies a private right of action is certainly a novel issue which the Court believes is best reserved for Illinois courts.  Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims brought under the Preventing Sexual Violence in Higher Education Act.  Counts VI, VII, and VIII are dismissed without prejudice.

### ii.  Larkin Defendants

The Larkin Defendants ask the Court to dismiss the claims against them, brought under the IGVA, for failure to state a claim.  Larkin Defs.' Mem. Supp. Mot. Dismiss 4–6, ECF No. 27.  They further argue that the Court should not exercise supplemental jurisdiction over the IGVA claims because they share no common nucleus of operative facts with the federal claims in this case and because the state claims would substantially predominate over the federal claims.

*Id*. at 6–9.  As jurisdiction is a threshold issue, *see Begolli v. Home Depot U.S.A., Inc*., 701 F.3d 1158, 1160 (7th Cir. 2012), the Court will first address whether supplemental jurisdiction over the IGVA claims is proper here.

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  State and federal claims are related when they "derive from a common nucleus of operative facts."  *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).  While "[a] loose factual connection between the claims is generally sufficient," *id*., the facts connecting them must nonetheless be *operative* in determining the outcome of the federal claim, *see Saud v. DePaul Univ*., Case No. 19-cv-3945, 2019 WL 5577239, at *7 (N.D. Ill. Oct. 29, 2019) (finding that supplemental jurisdiction was not conferred where "[t]he state law claims [had] little, if any, overlap with [the] evidence" required for resolution of the plaintiff's federal claims).  "Operative fact . . . is a proof-oriented concept"—"[i]t rests on notions of interrelated claims that should ordinarily be tried in a single lawsuit for sound jurisprudential reasons."  *Prudential-Bache Secs., Inc. v. Lisle Axis Assocs*., 657 F. Supp. 190, 195 (N.D. Ill. 1987) (quotation marks omitted).  Where claims are "merely sequentially related," *id*. (quotation marks omitted), or where the state law claim provides the "factual background" for the federal claim but where the federal claims "will be wholly unaffected if the [state] claim is dismissed, and the [state] claim can be resolved regardless of whether" the defendant is found to be liable under the federal claim, the connection is not sufficient to confer supplemental jurisdiction, *Gen. Auto Serv. Station v. City of Chicago*, No. 00 C 0368, 2004 WL 442636, at *12 (N.D. Ill. Mar. 9, 2004).

Here, because Plaintiff has brought claims against Augustana pursuant to Title IX, a federal law, the exercise of supplemental jurisdiction over Counts IV and V is appropriate if they share "a common nucleus of operative facts" with Count III, the remaining federal claim.[6]  *See Ammerman*, 54 F.3d at 424.  Although the alleged assaults by the Larkin Defendants are relevant background information to the Title IX claim, the evidence required to resolve the two sets of claims is entirely separate.  Resolving Counts IV and V depends exclusively on what occurred the night Plaintiff alleges she was assaulted by Conor and Erin; nothing beyond that night is relevant.  As for the Title IX claim, while Plaintiff's complaints to Augustana were based on the alleged assault, she seeks redress in this lawsuit only for Augustana's actions following her report to them of the assault, and thus the evidence required to resolve the federal claim concerns the behavior of *Augustana*, not the details of what occurred at the 2nd Avenue Bar in Rock Island.  Indeed, should the IGVA claims against Conor and Erin be dismissed, there would be no impact on the Title IX claim—Plaintiff could still recover for Augustana's retaliatory actions made in the wake of her report of sexual assault.

Perhaps supplemental jurisdiction would be appropriate if Plaintiff could bring a Title IX claim for Augustana's deliberate indifference to Conor and Erin's alleged assaults of Plaintiff, as then, the details of the alleged assaults would be relevant.  *Cf. id.* at 425 (finding that a common nucleus of operative facts existed between Title VII claims against an employer and assault and battery claims against an employee who purportedly sexually harassed another employee because the "factual allegations regarding the extent of the harassment by [the first employee] were highly relevant to the determination of whether appropriate remedial action had been taken by the [employer]").  But as the Court found above, Plaintiff cannot bring such a claim because

---

[6] The first amended complaint does not allege that diversity jurisdiction exists here.  *See* First Am. Compl. 1 (alleging only federal question and supplemental jurisdiction).

Augustana did not have control over the context in which the alleged assaults took place.  *See supra* Section II(b)(i)(1)(A)(I).  And Plaintiff expressly disclaims any intention of bringing a Title IX claim against Augustana based on Conor and Erin's alleged assaults.  *See* Pl.'s Resp. College Defs.' Mot. Dismiss 10–11 ("[A]lthough Defendants allege that Plaintiff sues Augustana . . . for the sexual assault that Conor Larkin committed . . . , she did not.  Rather, Plaintiff's [Title IX] claims . . . are for Augustana's own actions in direct violation of Title IX for gender discrimination in the aftermath of Plaintiff's sexual assault.").  Instead, this case involves two sets of claims with different relevant evidence and potential witnesses, which are not so interrelated that it would make jurisprudential sense to try them in the same lawsuit.  *See Prudential-Bache*, 657 F. Supp. at 195.

In the absence of a common nucleus of operative facts between the IGVA claims brought against Conor and Erin and the Title IX claim brought against Augustana, the Court lacks supplemental jurisdiction over the IGVA claims.  As such, Counts IV and V are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants Conor Larkin and Erin Larkin's (the "Larkin Defendants") motion to dismiss, ECF No. 26, is GRANTED; Defendants Augustana College, Tom Phillis, Kylee Ross, and Laura Schnack's (the "College Defendants") motion to dismiss, ECF No. 28, is GRANTED IN PART and DENIED IN PART; the College Defendants' motion for leave to file a reply, ECF No. 33, is GRANTED; and the Larkin Defendants' motion for leave to file a reply, ECF No. 34, is GRANTED.  The Clerk is directed to file the replies, ECF Nos. 33-1 & 34-1, on the docket.  Counts I and II are dismissed with leave to replead; Counts IV, V, VI, VII, and VIII are dismissed without prejudice.  Count III survives.  Plaintiff may file an

24

amended complaint within twenty-one days of entry of this Order.  The Clerk is directed to terminate Tom Phillis, Kylee Ross, Laura Schnack, Conor Larkin, and Erin Larkin as Defendants on the docket.

 Entered this 24th day of March, 2022.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
